UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| WILLIE JACKSON | CIVIL ACTION NO. 3:13-cv-3013 |
|     LA. DOC #169116 | |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| JAY RUSSELL, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Willie Jackson, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on November 6, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Ouachita Parish Corrections Center (OPCC), but claims he was wrongly accused of a disciplinary rules violation while he was working a prison job at the Ouachita Parish Sheriff's Office Transitional Work Release Center (TWRC) and that thereafter he was terminated from his prison work-release job and transferred to the OPCC without a hearing. He prays for declaratory and injunctive relief as well as nominal, compensatory, and punitive damages. This matter was referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Statement of the Case*

On October 6, 2013, plaintiff, a DOC inmate, was assigned to the TWRC program. Among other duties, he was employed as a custodian assigned to clean the bathrooms at TWRC.

As he was engaged in that task he stopped to pick up discarded commissary food packages and throw them into the trash can. Dy. Leonard entered the building a few steps behind plaintiff. Plaintiff noticed "a small piece of wadded up/balled up tainted plastic" on his foot locker and, "without inspection or examination" he picked up the plastic and flushed it down the toilet in one continuous motion.  Whereupon Dy. Leonard grabbed plaintiff's left hand and commanded him to "hold up." Leonard then penned plaintiff against the wall and reached into the toilet in a vain effort to retrieve the flushed object.

Thereafter, Leonard filed a Disciplinary Report charging plaintiff with Aggravated Disobedience and alleging, "On 10-6-13 at 0525 while doing a dorm count I walked into Building A bathroom. When I walked in inmate Willie Jackson was standing in front of a floor locker. I saw what appeared to be K-2 or marijuana on the locker. I went to step around inmate Jackson and he immediately dropped down and grabbed for the bag. I reached for the bag and told him to stop moving twice. He was able to flush the substance after a brief struggle. Inmate is being shipped to OCC." [Doc. 4-1, p. 1]

Plaintiff's October 6 request for grievance forms was not honored until October 16. Plaintiff now complains that an unspecified number of days elapsed between October 6, 2013, the date of the incident,  and the date he filed his complaint and he has still not been afforded a Disciplinary Hearing as mandated by the DOC's Disciplinary Rules and the Constitutions of the United States and the State of Louisiana.

He seeks a judgment declaring that the defendants' actions have violated his rights to due process and an injunction ordering him released from punitive confinement and returned to TWRC where he can resume his prison job as well as nominal, compensatory, and punitive

damages.

## Law and Analysis

### 1. Screening

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his  complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### 2. Work-Release and Due Process

Plaintiff implies that the defendants, in discharging him from the work-release program, deprived him of liberty or property without due process. Plaintiff has neither a liberty nor property interest in the work release program and therefore his due process claims are frivolous. La. R.S.15:1111, the statute establishing the work release program, provides in part, "The

Department [of Corrections] shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program. Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program..."

In *Welch v. Thompson*, 20 F.3d  636 (5th Cir. 1994),  the Fifth Circuit determined that La. R.S.15:1111 entrusts the actual operation of the work release program to the LDOC.  The court further determined that the statute does not dictate to the LDOC who it must put on work release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 <u>does not create a liberty interest</u> subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d  636, 644 (5th Cir. 1994). Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact.  In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it.  Rather, he must "have a legitimate claim of <u>entitlement</u> to it." *Id.* (emphasis supplied).   Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit

4

understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861

F.2d 846, 848 (5th Cir. 1988. Plaintiff can point to no rule or understanding which entitle him to

participate in the program. In any event, the Fifth Circuit has also held that prisoners have no

property interest work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th

Cir.1995). Plaintiff is not entitled to participate in any particular work-release program and

therefore to the extent that he implies that he was denied either a liberty interest or a property

right in violation of the Due Process Clause, such claims are subject to dismissal as frivolous.

### 3. Disciplinary Charges

Plaintiff implies that his due process rights were also violated by the defendants when

they leveled disciplinary charges against him, then deprived him of his prison job and his

placement at the TWRC without affording him a disciplinary hearing.

By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner

loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49

L.Ed.2d 451 (1976).  Plaintiff's claim, taken as true for the purposes of this Report, fails to state

a claim for which relief might be granted pursuant to 42 U.S.C. §1983 because  "[t]he Due

Process Clause does not protect every change in the conditions of confinement having a

substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct.

2293, 132 L.Ed.2d 418 (1995).  The federal jurisprudence holds, that while the states may under

certain circumstances create rights that implicate Due Process, such rights are limited to freedom

from restraints that impose "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation,

without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights.  *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). Therein the court stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy.  *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ...  do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's claims regarding the disciplinary rules violations, the loss of his prison job, and his ultimate transfer to OPCC are not "atypical" and thus his complaint fails to state a claim for which relief might be granted.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be

granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, December 19, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE